UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERIC JOHN WOLFGANG,                :
                                   :
          Plaintiff                :
                                   :
     v.                            :     CIVIL NO. 4:CV-02-1680
                                   :
PENNSYLVANIA DEPARTMENT            :
OF CORRECTIONS,  ET AL.,           :     (Judge McClure)
                                   :
          Defendants               :

## MEMORANDUM

March 20, 2006

## Background

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by

Eric John Wolfgang, an inmate presently confined at the Retreat State Correctional

Institution, Hunlock Creek, Pennsylvania (SCI-Retreat).   The Plaintiff alleges that

his constitutional rights were violated during his prior confinement at the State

Correctional Institution, Dallas, Pennsylvania (SCI-Dallas).[1]   He seeks

---

[1] Wolfgang was housed at SCI-Dallas from May 1, 2001 to November 27, 2002.

1

compensatory and punitive damages as well as injunctive relief, i.e., either a transfer or his outright release.

By Memorandum and Order dated September 22, 2004, Defendants Kelly Gallagher, Cheryl Wisniewski and Doctor Stanley Bohinski's motion to dismiss was granted.  The Order also entered dismissal in favor of Defendants H.R. Nicholson Company, Pennsylvania Department of Corrections (DOC), SCI-Dallas, and the prison's PRC, Tailor Shop, and Medical Department.  Requests for dismissal by Defendants John Dokonovitch, Thomas James, Jeffrey Beard, H. Clifford O'Hara, Donald Williamson, Richard Holmes, Thomas Stachelek and Patricia Ginochetti were also granted.

The remaining Defendants  are the following eight (8) SCI-Dallas officials: Superintendent Thomas Lavan;  Grievance Coordinator Kenneth Burnett; Counselor Diana Dean; Unit Manager Chris Putnam; Lieutenant Frederick Bleich; Program Manager Demming; Deputy Superintendent McGrady; and Captain Michael Griego.

 Wolfgang's initial remaining claim maintains that he  was subjected to retaliatory misconduct by Defendants Bleich and Griego which included the encouragement of prisoners to harass the Plaintiff,  the poisoning/tampering of his

food, failure to provide sufficient clothing, and removal of legal materials from his cell.

It is undisputed that pursuant to a request from the Plaintiff, he was placed in Administrative Custody on July 6, 2002 for his personal safety.   Administrative Custody prisoners at SCI-Dallas are housed in K Block.  Also confined in K Block are Disciplinary Custody prisoners.  As a result, both classifications of prisoners were allegedly intermingled with one another.[2]  Lieutenant Bleich and Captain Griego were both assigned to K Block during the relevant time period of this action.

Following the filing of the complaint in this matter, Defendants Bleich and Griego allegedly subjected Plaintiff to retaliation including the removal of legal materials from his cell and an incident of food tampering which took place on October 4, 2002.[3]  Wolfgang adds that Defendants Bleich and Griego "had Plaintiff set up in the shower."   Record document no. 30, ¶ 15.  Specifically,

---

[2]  A claim by Wolfgang that the placement of both Administrative and Disciplinary Custody prisoners in the same housing unit was an unconstitutional failure to protect was dismissed by this Court's September 22, 2004 Memorandum and Order.

[3]  The Commonwealth Defendants' previously filed motion to dismiss asserted that "[t]he action should be permitted to proceed against Lt. Bleich and Captain Griego on Wolfgang's claim that these Defendants poisoned his food."

those two Defendants allegedly identified the Plaintiff as being an informant, thereby placing him in harm's way.  Thereafter, they purportedly placed Wolfgang in the K Block shower room with a Disciplinary Custody inmate who hit him with a bar of soap.  He adds that the officers stood by and failed to intervene.

Furthermore, Lieutenant Bleich also purportedly allowed Administrative and Disciplinary Custody inmates in the exercise yard at the same time which resulted in an unidentified prisoner spitting on the Plaintiff when walking past him.  He adds that once again the correctional officers failed to intervene.  It is also alleged that Bleich confiscated Wolfgang's laundry bag and was involved in the failure to supply the prisoner with an adequate amount of underwear, t-shirts, and socks.

Plaintiff's second remaining claim alleges that Grievance Coordinator Burnett, Superintendent Lavan, Deputy Superintendent McGrady, and Program Manager Demming failed to protect his safety by not responding to his grievances.[4]  Specifically, Wolfgang states that he submitted grievances to Burnett and Lavan regarding the fact that prisoners were being served drinks made from

---

[4] It is noted that the aforementioned motion to dismiss did not raise any arguments for dismissal with respect to this claim.

beverage bases which contained Saccharine, a known carcinogen.  Lavan and

Putnam also purportedly failed to respond to grievances regarding the separation

of Plaintiff from Inmate Howard.  It is additionally asserted that although the

inmate sent grievances to Burnett, Lavan, Demming and McGrady regarding the

alleged retaliation tactics being employed against him, no corrective action was

taken.

The Plaintiff's final remaining claim contends that Counselor Diana Dean

and Unit Manager Chris Putnam failed to protect his safety during February, 2002

by not enforcing a directive that he be kept separated from fellow prisoner Antonio

Howard.  Inmate Howard allegedly threatened Wolfgang's life when they were

previously confined together at another state correctional facility.   The original

complaint indicates that while subsequently confined at the Rockview State

Correctional Institution, Bellefonte, Pennsylvania, an administrative directive

requiring that Wolfgang be separated from Inmate Howard was issued.

After Howard arrived at SCI-Dallas,  Plaintiff alleges that he wrote to Dean

and Putnam advising them of the aforementioned separation order.  He concludes

that their failure to respond constituted a failure to protect him from a known

safety risk.[5]   He further indicates that their disregard for his safety was intentional due to the fact that he had previously accused Defendant Putnam of providing him with marijuana.

Presently pending is a summary judgment motion submitted by the Remaining Defendants.  The motion has been fully briefed and is ripe for consideration.

## Discussion

The Remaining Defendants contend they are entitled to entry of summary judgment on the grounds that: (1) Wolfgang can produce no evidence that Lieutenant Bleich and Captain Griego took any adverse action against him; (2) a viable claim of retaliation has not been alleged against Bleich and Griego; (3) Plaintiff can produce no evidence that Defendants Burnett, Lavan,  McGrady, Demming, Dean and Putnam failed to protect his safety; and (4) Wolfgang failed to exhaust his administrative remedies with respect to his assertions of being subjected to retaliation.

### A.      Standard of Review

---

[5]  Based on a review of the record there is no clear indication that Howard has assaulted or injured the Plaintiff while incarcerated at SCI-Dallas.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, supra, 106 S.Ct. at 2553 and 2554.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence"

to defeat the motion, consisting of verified or documented materials.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if

a reasonable jury, considering the evidence presented could find for the nonmoving

party."  Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes

over facts that might affect the outcome of the suit will preclude the entry of

summary judgment.  Id.  In evaluating a motion for summary judgment, the entire

record must be examined in the light most favorable to the nonmoving party.

### B.   Retaliation

The Remaining Defendants assert that Plaintiff's retaliations claims against

Lieutenant Bleich and Captain Griego must fail because he has not established that

they took any adverse action against him and there is no evidence that his

engagement in a constitutionally protected activity was a motivating factor  behind

any adverse action.

In support of their argument, the Remaining Defendants have submitted a

declaration under penalty of perjury by Lieutenant Bleich, who indicates that he

was not aware that Plaintiff had filed the first grievance, which was initiated on

August 26, 2002.  See Record document no. 83, Exhibit A.  Lieutenant Bleich

adds that documents show that he received a copy of the second grievance which

8

was submitted on November 19, 2002.  The declarant also denies subjecting Wolfgang to any mistreatment.

Captain Griego has also submitted a declaration under penalty of perjury. See id. at Exhibit B.  Griego states that he was unaware that Plaintiff had filed either a grievance or initiated this lawsuit until after Wolfgang had left SCI-Dallas.  The Captain adds that at no time did he subject the Plaintiff to any of the alleged mistreatment.

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)(a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied, only that the challenged actions were motivated in substantial part by a desire to punish him for the exercise of a constitutional right).

In Rauser v. Horn, 241 F.3d 330, 333 (2001), the Third Circuit held that a prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected.  If the prisoner satisfies that requirement he must then show he suffered some "adverse action" at the hands of prison officials.  Id.  Allah

defined adverse action as being "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." <u>Allah</u>, 229 F.3d at 225.

Based on a review of the record, Plaintiff has alleged facts which could show that he was subjected to adverse action by Bleich and Griego. Specifically, there are clearly issues of material fact in dispute as to whether Lieutenant Bleich and Captain Griego engaged in any mistreatment of the Plaintiff.

However, Plaintiff has failed to establish a retaliatory motive by those two Remaining Defendants. Plaintiff indicates that Lieutenant Bleich and Captain Griego mistreated him after he filed complaints and grievances about being housed in the same housing unit as Disciplinary Custody prisoners.

It is undisputed that Plaintiff filed two (2) grievances objecting to the housing together of Administrative and Disciplinary Custody prisoners. Neither grievance included any claims against Bleich or Griego. Rather, the substance of the grievances was a challenge to a prison/DOC policy.

Wolfgang's original complaint in this matter likewise did not assert any claims against Bleich and Griego. An amended complaint filed on November 26, 2002 did name Bleich and Griego as Additional Defendants. However, the only claims asserted against those two officials was that they ignored Wolfgang's

complaints.  The Plaintiff was transferred from SCI-Dallas on November 27, 2002.

Based upon an application of the above standards, Wolfgang's wholly speculative allegations fail to satisfy the <u>Rauser</u> requirement of showing a retaliatory motive.  The Plaintiff has simply not demonstrated that his exercise of a constitutionally protected right was a substantial or motivating factor behind the purported mistreatment attributed to Remaining Defendants  Bleich and Griego.  It is noted that although the original complaint includes Plaintiff's claims that he was hit with a bar of soap and spat upon, that conduct is not attributed to any conduct by Bleich and Griego but rather caused by the joint housing of Administrative and Disciplinary Custody prisoners.

Furthermore, the amended complaint alleges that Bleich subjected many K-Block inmates to mistreatment.  <u>See</u>  Record document no. 30, ¶ 11.  Wolfgang clearly alleges that other K-Block prisoners suffered the same type of abuse.  <u>See</u> <u>id</u>. at ¶¶ 18, , 19, 21.  Based on the Plaintiff's own admissions, he was not singled out for any mistreatment while on K-Block, rather he was just one of many K-Block prisoners who were abused by Bleich and Greigo.  Consequently, Wolfgang has not come forward with any facts which would allow a rational trier of fact to conclude that Bleich and Griego had a retaliatory motive.  Rather, Wolfgang's own

11

claims support the conclusion that he would have been abused by Bleich and Greigo simply as a result of his confinement on K-Block, not as a desire to punish him for his initiation of grievances.

## C.    Administrative Exhaustion

The Remaining Defendants next assert that Wolfgang failed to exhaust his available DOC administrative remedies with respect to his retaliation claims.  It is initially noted that a similar argument was previously raised and rejected in the Defendants' motion to dismiss.[6]

42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues."  Porter v. Nussle, 122

---

[6]  In denying the Defendants' motion to dismiss this Court concluded that Plaintiff's arguments for non-compliance with the exhaustion requirement were sufficient, at that juncture, to demonstrate substantial compliance with the DOC's administrative remedy procedure.

S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Claims

for monetary relief are not excused from the exhaustion requirement.  Nyhuis v.

Reno, 204 F.3d 65, 74 (3d Cir. 2000).  Dismissal of an inmate's claim is

appropriate when a prisoner has failed to exhaust his available administrative

remedies before bringing a civil rights action.  Ahmed v. Sromovski, 103 F. Supp.

2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not

while the suit is pending."  Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2

(6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

A subsequent Third Circuit decision, Mitchell v. Horn, 318 F.3d 523, 529

(3d Cir. 2003) stated that "[f]ailure to exhaust administrative remedies is an

affirmative defense for the defendant to plead."  See also Massey v. Helman, 196

F.3d 727, 735 (7th Cir. 2000), cert. denied, 532 U.S. 1065 (2001); Jenkins v.

Haubert, 179 F.3d 19, 29 (2d Cir. 1999).  Consequently, a prisoner does not have

to allege in his complaint that he has exhausted administrative remedies.  Ray v.

Kertes, 285 F.3d 287 (3d Cir. 2002).  Rather, it is the burden of a defendant

asserting the defense to plead and prove it.  Id.; Williams v. Runyon,130 F.3d

568, 573 (3d Cir. 1997); Charpentier v. Godsil, 937 F.2d 859 (3d Cir. 1991); Fed.

R. Civ. P. 8(c).

The DOC has established a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective January 1, 2001).  With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Secretary's Office of Inmate Grievances and Appeals.

A prisoner, in seeking review through the grievance system, may include requests for "compensation or other legal relief normally available from a court." (DC-ADM 804-4, issued April 29, 1998.)  Furthermore, " [g]rievances must be submitted for initial review to the Facility/Regional grievance Coordinator within fifteen (15) days after the events upon which the claims are based," but allowances of extensions of time for good cause, "will normally be granted if the events complained of would state a claim of a violation of a federal right."  Id.

The Remaining Defendants' request for summary judgment acknowledges that "Wolfgang submitted twenty grievances from August 1, 2001 to November 20, 2002."  Record document no. 83, p. 17.  However, they maintain that none of

14

those grievances "complained of Wolfgang being assaulted by an inmate, Wolfgang having legal paperwork taken from his cell, staff encouraging inmates to assault Wolfgang, or staff taking and withholding Plaintiff's clothing." Id. at p. 18. Furthermore, while the Plaintiff grieved a claim of food tampering, his grievance did not specifically implicate Defendants Bleich and Griego. They add that none of Plaintiff's grievances identify Lieutenant Bleich and Captain Griego as being responsible for any mistreatment as required under Spruill v. Gillis, 373 F. 3d 218, 228 (3d Cir. 2004)

Wolfgang's original complaint alleges that although he submitted grievances regarding his present claims, SCI-Dallas Grievance Coordinator Burnett would either refuse to sign his grievances or claim that they were misplaced or never received. See Record document no. 1, p. 3. Attached to the first amended complaint are copies of various grievances and responses relating to his medical treatment, deprivation of t-shirts, underwear and socks, being required to pay for medical care and the alleged poisoning of his food. See Record document no. 8.

Plaintiff's opposing brief to the summary judgment motion acknowledges that he was familiar with the DOC's administrative remedy procedure and that "you can not file anything without exhausting." Record document no. 84, p. 3.

Wolfgang adds that he filed and exhausted grievances with respect to each of his surviving claims.

It is noted that Plaintiff's opposing brief to the motion to dismiss at one point contradictorily stated that correctional officials intentionally prevented his compliance with the administrative exhaustion requirement by searching his cell and taking "the initial grievances filed by the Plaintiff and responses."  Record document no. 51, ¶ 3.  However, he also claimed to have "exhausted the remedies of all allegations relating to the original complaint and amended complaint."  Id.

The Remaining Defendants clearly bear the burden of demonstrating that there has been non-compliance with the exhaustion requirement.  In Spruill, the Third Circuit recognized that under the DOC's administrative review system a prisoner's grievance should identify specific persons, if practicable.  It held that an unexplained failure to identify a responsible prison official in a grievance constitutes a procedural default of the claim.  The Court of Appeals added that the prison's grievance process could excuse such a procedural default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance.

In support of their latest non-exhaustion argument, the Remaining

Defendants have submitted a declaration under penalty of perjury by Cindy Watson, an administrative officer employed in the DOC's office of Inmate Grievances and Appeals.  Watson states that based on her review of the DOC''s computerized records, Wolfgang initiated twenty (20) grievances between August 1, 2001 and November 27, 2001.  See Record document no. 83 Exhibit C, ¶ 13.

Watson sets forth a brief summary of each grievance.  Copies of the relevant grievances, responses, etc., have not been provided by Watson.   Watson summarizes Grievance 32466 filed on October 8, 2002 as complaining of food and drink tampering but not implicating either Lieutenant Bleich or Captain Griego. The declarant concludes that based on her review, Plaintiff never initiated any grievances with respect to claims that:  (1) he was ever assaulted by any SCI-Dallas personnel or prisoners; (2) Bleich and Griego took legal documents from his cell; (3) Bleich and Griego left him alone in the K Block shower room or encouraged any other prisoner to assault Wolfgang; (4) Bleich confiscated Plaintiff's laundry bag or denied him clothing; (5) Bleich and Griego poisoned Plaintiff's food; and (6) Bleich and Griego subjected Plaintiff to retaliation.

It is noted that this Court's review of the numerous grievances submitted by Wolfgang fails to reveal that any of those six (6) enumerated claims were the

subject of any administrative grievance.  Furthermore, the copies of grievances submitted by Plaintiff do not dispute or contradict in any way the summarized account submitted by Watson.

A review of the undisputed record, especially Watson's declaration and the grievance copies submitted by the Plaintiff himself, shows that the Remaining Defendants have satisfied their burden under <u>Williams</u> of establishing that Wolfgang's surviving claims against Bleich and Griego have not been administratively exhausted in accordance with <u>Spruill</u>.  Plaintiff  has also not adequately demonstrated any proper basis as to why he should be excused from the exhaustion requirement.  Pursuant to the above discussion, the Remaining Defendants' request for summary judgment on the basis of failure to exhaust administrative remedies under § 1997e(a) will be granted in favor of Lieutenant Bleich and Captain Griego.

### D.   Failure To Protect

Plaintiff alleges that Remaining Defendants Burnett, Lavan, McGrady, Demming, Dean, and Putnam violated the Eighth Amendment in that they failed to protect his safety.  In his amended complaint, Wolfgang states that he wrote to Superintendent Lavan and complained about the joint housing of Administrative

and Disciplinary custody prisoners.  See  Record document no. 30, ¶ 11.

Wolfgang next states that he initiated an unsuccessful grievance with Grievance

Coordinator Burnett regarding the same issue.  Appeals of that grievance were

denied by Remaining Defendants Demming and Lavan.  Wolfgang later asserts that

he also sent many request slips and grievances to McGrady, Lavan Dean, Putnam

and Demming regarding aspects of his Administrative Custody.  See  id. at ¶ 20.  It

is also generally alleged that Grievance Coordinator Burnett, Superintendent Lavan,

Deputy Superintendent McGrady and Program Manager Demming covered up

constitutional misconduct committed by other SCI-Dallas employees and failed to

take corrective action after being advised that a falsified document describing

Wolfgang as a child molester was being circulated among the inmate population

and that the document had led to extortion of the Plaintiff by another prisoner.

Next, Wolfgang contends that prison officials failed to enforce an order that

he be separated from Inmate Antonio Howard.  Specifically, Plaintiff states that

Howard threatened his life when the two were confined together in 1992 at the Erie

County Prison, Erie, Pennsylvania.  Additional threats were also made when both

prisoners were housed at the State Correctional Institution, Pittsburgh,

Pennsylvania in 1993-94.  As a result, a directive ordering the separation of the two

prisoners was purportedly issued and placed in Wolfgang's DOC institutional file. During February, 2002, Plaintiff states that he wrote to Dean, Lavan, and Putnam advising them that Howard was now at SCI-Dallas and requesting enforcement of the separation order. Those three (3) Remaining Defendants allegedly failed to respond to Plaintiff's request.

It is initially noted that prisoners have no constitutionally protected right to a grievance procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Wilson v. Horn, 971 F. Supp. 943, 946 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, Civ. A. No. 94-6884, 1996 WL 131130, at *1 (E.D. Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996).

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Accordingly, contentions that certain

correctional officials violated an inmate's constitutional rights by failing to investigate or take corrective action following his submission of grievances are generally without merit.

Second, the Supreme Court in Farmer v. Brennan, 511 U.S. 825, (1994), described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.  Thus, to succeed on such a claim, the prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; (2) that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) that the defendant actually drew this inference; and (4) that the defendant deliberately disregarded the apparent risk. Id. at 837.

Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This

requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837.  In <u>Beers-Capitol</u> it was also recognized that a defendant's knowledge of a risk can be proved indirectly by circumstantial evidence.

In regard to the claims that Plaintiff's complaint regarding the housing of Administrative and Disciplinary Custody inmates, this Court has already concluded that the housing of Administrative and Disciplinary Custody prisoners was not an unconstitutional failure to protect.  <u>See</u> Record document no. 57, p. 32.

Second, it is undisputed that Wolfgang's request for placement in Administrative Custody was granted on July 6, 2002 and he remained there until his transfer to another correctional facility on November 27, 2002.   Third, there is no evidence to support an indication that Plaintiff was placed at an excessive risk of harm.  On the contrary, Wolfgang's placement in Administrative Custody and his ultimate transfer undermine his claim that the Remaining Defendants failed to protect his safety.  This conclusion is further bolstered by the fact that there are no facts or allegations that the Plaintiff was physically assaulted or injured (other than his <u>de minimis</u> assertions of having had a bar of soap thrown at him and being spat

upon) due to the purported indifference to his grievances.

With respect to Inmate Howard, said prisoner was transferred to SCI-Dallas on December 6, 2001.[7]  From November 21, 2001 to July 6, 2002, Plaintiff was housed in general population.  Thus, there was a prolonged period of time where both prisoners were housed in general population without incident.  A declaration under penalty of perjury by DOC Transportation Coordinator Tanya Brandt states that an administrative directive ordering that Howard and Wolfgang be separated went into effect on November 18, 2002, nine (9) days before Plaintiff's transfer.  See Record document no. 83, Exhibit E.  According to Brandt, there was no order separating those two individuals prior to that date.  Since the separation order requested by Wolfgang was issued, it cannot be concluded that the Plaintiff's request for said relief was ignored.

It is also noted that the record contains no indication that Howard assaulted or even attempted to attack the Plaintiff during the period that they were both at SCI-Dallas.[8]  Moreover, the Remaining Defendants maintain and Plaintiff does not

---

[7]  Howard is identified by the Plaintiff as being one of 35 persons presently incarcerated who pose a threat to his safety.

[8]  Howard is not identified as being the prisoner who either threw a bar of soap

(continued...)

23

dispute that the two inmates were never confined in the same building during their mutual SCI-Dallas confinement.  <u>See</u> Record document 75, ¶ 9.  The Remaining Defendants that under the DOC's inmate separation policy, prisoners who are to be kept separated from one another may be held in the same correctional facility provided that they are housed in separate buildings.  Howard also presently poses no danger to Wolfgang's safety since they are now confined in different correctional institutions.[9]

Based on an  application of <u>Farmer</u> and <u>Beers-Capitol</u> to the following

_____

[8](...continued)
or spat at the Plaintiff.  It is also noted that the record does not contain any facts which would support a finding that Howard had a propensity for violence towards other inmates.

[9]   42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In <u>Allah v. Al-Hafeez,</u>  226 F.3d 247,250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages.  However, the Court added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.
Under the standards announced in <u>Allah</u>, Wolfgang's requests for both compensatory and punitive damages are not barred by Section 1997e(e) to the extent that they seek non-compensatory damages.  <u>See</u> <u>Ostrander v. Horn</u>, 145 F. Supp. 2d 614, 618 (M.D. Pa.  2001).

factors:  (1) Plaintiff's request to be placed in Administrative Custody was approved; (2) Howard and Wolfgang were kept in separate buildings throughout their stay at SCI-Dallas; (3) the separation order sought by the Plaintiff was eventually issued ; and (4) Wolfgang was transferred to another correctional facility, the Plaintiff has not made a sufficient showing that the Remaining Defendants were deliberately indifferent to his safety.  In conclusion, the Remaining Defendants' request for summary judgment will be granted.


    s/ James F. McClure, Jr.    
JAMES F. McCLURE, JR.
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERIC JOHN WOLFGANG,                    :
                                       :
                Plaintiff              :
                                       :
        v.                             :       CIVIL NO. 4:CV-02-1680
                                       :
PENNSYLVANIA DEPARTMENT                 :
OF CORRECTIONS,  ET AL.,               :       (Judge McClure)
                                       :
                Defendants             :

## <u>ORDER</u>

March 20, 2006

In accordance with the accompanying Memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.    The Remaining Defendants motion for summary

      judgment (Record document no. 74) is GRANTED.

2.    The Clerk of Court is directed to CLOSE the case.


      <u>    s/ James F. McClure, Jr.    </u>
      JAMES F. McCLURE, JR.
      United States District Judge